**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| IN RE: KWOK, *Debtors* | BANKR. NO. 22-50073 (JAM) *Chapter 11* |
| TAURUS FUND LLC; SCOTT BARNETT, AS TRUSTEE FOR TAURUS FUND LLC; and TAURUS MANAGEMENT LLC, AS TRUSTEE FOR TAURUS FUND LLC, *Appellants*, | ADV. PRO. NO. 23-5017<br>CIVIL NO. 3:25-CV-1139 (KAD) |
| v. | AUGUST 20, 2026 |
| LUC A. DESPINS, CHAPTER 11 TRUSTEE, *Trustee-Appellee*. | |

**MEMORANDUM OF DECISION**

Kari A. Dooley, United States District Judge:

Taurus Management LLC, Scott Barnett, and Taurus Fund LLC (collectively, "Appellants" or the "Taurus Parties") challenge the order of the Bankruptcy Court granting Chapter 11 Trustee Luc A. Despins' ("Trustee" or "Appellee") Motion for Summary Judgment (the "MSJ Order"), in which the Bankruptcy Court determined: (a) that Taurus Fund is the alter ego of the Individual Debtor Ho Wan Kwok (the "Debtor" or "Kwok"); (b) that the Debtor equitably owns both Taurus Fund and a residential property known as 675 Ramapo Valley Road in Mahwah, New Jersey (hereinafter, the "Mahwah Mansion"); and (c) that Taurus Fund's assets, including the Mahwah Mansion, as well any ownership interests in Taurus Fund, are property of the Debtor's bankruptcy estate (the "Estate"). *See Despins v. Taurus Fund LLC, et al.*, No. 23-AP-5017 (Bankr. D. Conn. July 7, 2025), ECF No. 172. For the reasons set forth below, the MSJ Order is **AFFIRMED**.

**Procedural History**

The Adversary Proceeding

On July 11, 2023, the Trustee commenced the underlying Adversary Proceeding seeking: (1) a declaratory judgment that Taurus Fund and the Mahwah Mansion are equitably owned by the Debtor; and (2) a turnover order of Taurus Fund and its assets, as well as the Mahwah Mansion (including the fixtures and personal property within the Mahwah Mansion), to the Trustee. *See* Complaint, Adv. Proc., ECF No. 1. Alternatively, the Complaint sought a declaratory judgment that Taurus Fund is the Debtor's alter ego, and a turnover order of Taurus Fund's assets to the Trustee. *See id.* Though the Trustee's claims arose under New Jersey and Nevada law, the Adversary Proceeding sought declaratory relief pursuant to Sections 541, 542, and 544 of the Bankruptcy Code. *See generally id.* In support of its claims, the Trustee asserted, *inter alia*, that:

a. Taurus Fund was managed by the Debtor's chauffeur and/or bodyguard Scott Barnett, and Taurus Management, another shell company under the Debtor's control;
b. Despite Taurus Fund's nominal title to the Mahwah Mansion, the Debtor directed and was personally involved in the purchase of and renovations to the Mansion, using money that was under his control;
c. A "public records" search under the Debtor's name lists the Mahwah Mansion as the Debtor's personal address; and
d. The Debtor used the Mahwah Mansion as his residence, filling it with his own personal belongings and funding millions of dollars of renovations to the property through Taurus Fund, notwithstanding that "management" of the Mansion is allegedly entrusted to Mr. Barnett;

*See id.* at 2, 12, 15.

On September 11, 2024, the Trustee filed a Motion for Summary Judgment as to all of his claims. MSJ, Adv. Proc., ECF No. 124. On October 16, 2024, Appellants filed an objection to the Motion for Summary Judgment, attaching thereto, *inter alia*: (a) the Declaration of Michael T. Conway (the "Conway Declaration"); (b) the Declaration of Fahad Mohammed (the "Mohammed Declaration"); and (c) the Declaration of Scott Barnett (the "Barnett Declaration"). MSJ Opp.,

Adv. Proc., ECF No. 137. On November 6, 2024, the Trustee filed a reply in further support of his Motion for Summary Judgment. MSJ Reply, Adv. Proc., ECF No. 147. On November 19, 2024, the Bankruptcy Court held a hearing on the Motion for Summary Judgment. Following the hearing, the Bankruptcy Court granted the Trustee's request to withdraw and amend his responses (or lack thereof) to Appellants' Requests for Admission ("RFAs"),[1] and relatedly granted Appellants additional time to conduct discovery and an opportunity to file a supplemental response to the Motion for Summary Judgment regarding (only) any newly discovered factual material. *See* Adv. Proc., ECF No. 155. Indeed, the Court expressly advised the parties that it would not entertain supplemental briefing that raised or reargued legal arguments. *See id.* On February 7, 2025, Appellants filed a supplemental response to the Motion for Summary Judgment, and attached thereto, *inter alia*: (a) the Supplemental Declaration of Michael T. Conway (the "Supplemental Conway Declaration"); and (b) the Declaration of Haoran He (the "He Declaration"). Supp. MSJ Opp., Adv. Proc., ECF No. 168. On February 14, 2025, the Trustee filed a supplemental reply brief. Supp. Reply, Adv. Proc., ECF No. 169. On July 7, 2025, the Bankruptcy Court issued the MSJ Order. *See* MSJ Order, Adv. Proc., ECF No. 172.

The MSJ Order – Undisputed Facts

In the MSJ Order, the Bankruptcy Court set forth the undisputed facts after first ruling on several evidentiary objections raised by both parties in their briefing on the Trustee's Motion for Summary Judgment. As discussed below, this Court affirms each of the evidentiary rulings challenged by Appellants. Thus, the facts herein are derived from the undisputed facts set forth in the MSJ Order. Additionally, it is worth observing that the MSJ Order included 72 separate

[1] On appeal, Appellants purport to challenge this decision as well. But as set forth below, the Court concludes that the Bankruptcy Court did not abuse its discretion in permitting the Trustee to withdraw and amend his responses to Appellants' RFAs.

numbered findings of fact spanning 34 pages, and included painstaking citations to the mountain of record evidence presented by the Trustee. While the Court has considered and relied upon all of the undisputed material facts, it does not repeat them herein and simply summarizes the sequence of events as it relates to the Mahwah Mansion.

*The Taurus Parties*

Taurus Fund and Taurus Management are Nevada and New Mexico LLCs, respectively. *See* MSJ Order, Statement of Undisputed Facts, at ¶ 2. Taurus Fund is the title owner of the Mahwah Mansion. *Id.* at ¶ 3. Taurus Management and Scott Barnett are listed as managers or managing members of Taurus Fund. *Id.* at ¶ 2.

*The Purchase of the Mahwah Mansion*

In late November 2021, Aaron Mitchell, a personal attorney of the Debtor, contacted a real estate agent, Christine Frosini, regarding a potential purchase of the Mahwah Mansion. *See id.* at ¶¶ 4(c), 6. On November 28, 2021, the Debtor and his wife, Ms. Hing Chi Ngok, toured the Mahwah Mansion with the Debtor's driver and certain security personnel. *Id.* at ¶ 8. On December 2, 2021, the Debtor visited the Mahwah Mansion a second time. *Id.* at ¶ 12. On December 3, 2021, Attorney Mitchell submitted to Ms. Frosini a formal offer to purchase the Mahwah Mansion for $26,000,000.00 in cash. *Id.* at ¶ 13. Later that day, the offer was accepted. *See id.* On December 6, 2021, a purchase agreement for the sale of the Mahwah Mansion was executed by and between "Crocker Mansion Estate, LLC" and "Taurus Fund SP."[2] [3] *Id.* at ¶ 16. The purchase agreement explicitly provided that the Mahwah Mansion would be used and/or occupied as a single

---

[2] It is undisputed that the Mahwah Mansion is also commonly known as the "Crocker Mansion." *See* MSJ Order, Statement of Undisputed Facts at ¶ 3.

[3] After the purchase agreement was executed, Attorney Mitchell was informed that an "SP" is "not a recognized entity for title purposes in New Jersey," at which point Attorney Mitchell advised that an LLC would be formed at closing. *See* MSJ Order, Statement of Undisputed Facts at ¶ 21. And indeed, on December 16, 2021, Taurus Fund was formed under Nevada law. *Id.* at ¶ 26.

family residential dwelling. *See id.* ¶ 18. Ms. Frosini understood that the Mahwah Mansion was being purchased by the "Guo family" for residential use, and at times referred to the "Guo family" as the "princip[al]" behind the purchase. *See id.* at ¶¶ 14, 24, 28–29. On December 16, 2021, Crocker Management Estate, LLC executed the deed transferring ownership of the Mahwah Mansion to Taurus Fund. *Id.* at ¶ 27.

<u>Transfer and Use of G Club Monies</u>

G Club Operations LLC ("G Club') is an entity that purported to offer concierge services to its members.[4] *See id.* at ¶ 5(a). Crane Advisory Group, an entity created in 2020 and controlled by the Debtor, acted as an escrow agent for G Club, and received the purported "member payments" for G Club. *See id.* at ¶ 39. On November 28, 2021, following demands by the Debtor and an ensuing arbitration proceeding, Attorney Mitchell's law firm, Lawall & Mitchell, as counsel to G Club, and without authorization from G Club's nominal management, transferred $46,549,275.00 of escrowed funds allocated to G Club, to Hamilton Opportunity Fund. In turn, and again without authorization from G Club's nominal management, Hamilton Opportunity Fund paid both the $2,000,000.00 deposit, as well as $24,500,000.00 in closing costs, in connection with the purchase of the Mahwah Mansion. *See id.* at ¶¶ 44–49. In short, the purchase of the Mahwah Mansion was funded with G Club monies. *See id.* at 37.

*The Debtor's Use and Control of the Mahwah Mansion*

In addition to orchestrating the purchase of the property, *see id.* at ¶¶ 8, 14, 24, 28–29, the Debtor was also deeply involved in coordinating the purchase of high end furnishings and artwork

[4] The parties do not appear to dispute that the Debtor promoted G Club, was involved in its creation and day-to-day operations, and falsely induced its members to part with their money on the belief that they were obtaining legitimate "concierge services." In fact, Appellants argue on appeal that the Mahwah Mansion was purchased using fraudulently obtained funds from G Club and its members. The Trustee has asserted, in a separate adversary proceeding, that G Club was the Debtor's alter ego. *See Despins v. ACA Capital Group, Ltd., et al.*, No. 24-AP-5249 (JAM).

for the Mahwah Mansion, as well as numerous renovations. *See id.* at ¶¶ 32–33. In connection therewith, the Debtor engaged Promemoria, a high-end Italian furniture and interior design company that the Debtor had previously used in connection with projects relating to his other residences, as well as his yacht. *See id.* at ¶ 34.

On March 15, 2023, during a search of the Mahwah Mansion, the FBI recovered numerous personal possessions of the Debtor and his immediate family members, including, *inter alia*: (1) the Debtor's prescription medication; (2) the Debtor's Hong Kong ID card and passport; (3) the Debtor's social security card and health insurance card; (4) personal photographs of the Debtor; and (5) clothing, handbags, shoes, and personal items, including a collection of the Debtor's suits. *See id.* at ¶ 55. The Wi-Fi password for the Mahwah Mansion was "Homesweethome." *Id.* at ¶ 58. Additionally, the Debtor used the Mahwah Mansion to stream videos to his followers. *Id.* at ¶ 61. And in 2023, numerous pieces of furniture, artwork, and antiques were removed from the Debtor's residence at the Sherry-Netherland Hotel, and moved to the Mahwah Mansion. *See id.* at ¶ 62.[5]

*Management, Control, and Use of Taurus Fund*

Taurus Fund's sole nominal member is Taurus Management, which itself is nominally owned by Hamilton Opportunity Fund. *See id.* at ¶ 65. Hamilton Opportunity Fund is nominally owned by William Je, an investment banker and the Debtor's "finance person." *Id.* Taurus Fund's nominal manager, Scott Barnett, has been employed as the Debtor's security guard since 2020. *Id.* at ¶ 66. Mr. Barnett has no personal knowledge regarding the Debtor's ownership of, or sourcing of the funds for, Taurus Fund. *Id.* Indeed, despite having signed Taurus Fund's articles of

[5] The MSJ Order also detailed the evidence as it relates to the use of the Mahwah Mansion by Debtor's wife, daughter and son, *see* MSJ Order, Statement of Undisputed Facts at ¶¶ 55–56, 59, to include that the individual overseeing the renovations was the Debtor's daughter's boyfriend, *id.* at ¶ 31.

organization, Mr. Barnett had no role at Taurus Fund, and in fact, was (at least initially) unaware that he was the manager of Taurus Fund. *Id.* at 68–69.

Notwithstanding that Taurus Fund's only asset was the Mahwah Mansion, the Fund was used to pay invoices seemingly unrelated to the Mahwah Mansion, including for a Porsche piano; moving expenses; plumbing work at the Debtor's property in Connecticut; and storage unit rentals elsewhere in New Jersey. *Id.* at ¶ 71. Following the Debtor's criminal conviction on July 16, 2024, Taurus Fund ceased making upkeep payments related to the Mahwah Mansion. *See id.* at ¶ 72.

<u>The MSJ Order – Evidentiary Issues</u>

Preliminarily, the Bankruptcy Court resolved a number of evidentiary objections asserted by both parties. The Bankruptcy Court first overruled Appellants' objections to the Trustee's reliance on trial transcripts and exhibits from the Debtor's criminal proceedings, finding that: (a) "insofar as the [trial] testimony satisfies the requirements of an affidavit or declaration, the trial transcripts of the [Debtor's criminal proceeding] are properly before the [Bankruptcy] Court at summary judgment"; and (b) as to the authentication and foundation of the Trustee's exhibits, "[t]he trial transcripts demonstrate the witnesses in the [Debtor's criminal proceeding] could be called to testify at trial to authenticate and provide foundation for the Trustee['s] [e]xhibits." *Id.* at 10–11.

The Bankruptcy Court also resolved certain of the Trustee's evidentiary objections. As relevant here, the Bankruptcy Court sustained the Trustee's objection to the Mohammed Declaration, agreeing with the Trustee that Mr. Mohammed lacked relevant personal knowledge of the transactions at issue. *Id.* at 11–12. Specifically, Judge Manning concluded that "the

Mohammed Declaration draws conclusions without personal knowledge of the transactions at issue based on unspecified documents that have not been presented to the Court."[6] *Id.* at 12.

The MSJ Order – Merits

Having resolved these evidentiary issues, the Bankruptcy Court turned to the merits of the Trustee's Motion. The Bankruptcy Court first resolved a challenge to the Trustee's standing, in which Appellants argued that the Trustee's claims are not general claims of the Debtor's creditors, but rather, the particular claims of victims of the Debtor's fraud scheme, and thus, foreclosed by *Shearson Lehman Hutton Inc. v. Wagoner*, 944 F.2d 114, 118 (2d Cir. 1991). *See id.* at 49–52. Appellants further asserted that the Trustee lacks standing to bring his claims because he is *in pari delicto* with Appellants in the commission of the aforesaid fraud scheme. *See id.* The Bankruptcy Court rejected both arguments, and found that "the Trustee does not allege, or seek relief for, securities or wire fraud; instead he alleges beneficial ownership and alter ego and, on these bases, seeks turnover of property of the estate." *Id.* at 50. Accordingly, the Bankruptcy Court concluded that the *Wagoner* doctrine was inapplicable, and that the Trustee had standing to assert his claims. *See id.* at 52. The Bankruptcy Court relatedly rejected Appellants' assertion that the victims of the Debtor's crimes have a higher priority than the Trustee in recovering from the Mahwah Mansion and Taurus Fund generally, finding such claim was "not presently before the [Bankruptcy] Court." *Id.*

Turning to the Trustee's beneficial ownership claim as to the Mahwah Mansion, the Bankruptcy Court applied New Jersey beneficial ownership law and evaluated the factors set forth in *LiButti v. United States*, 968 F. Supp. 71, 75 (N.D.N.Y. 1997). *See id.* at 54–59. Specifically, the Bankruptcy Court found that there was no genuine dispute of material fact that: (i) the Debtor

[6] The Bankruptcy Court also overruled the Trustee's objection to the Supplemental Conway Declaration.

controlled the purchase of the Mahwah Mansion; (ii) the Debtor used the Mahwah Mansion as his own; (iii) the Mahwah Mansion was purchased shortly before the Debtor filed for bankruptcy and while he was nominally insolvent and facing collection activity; (iv) no consideration was exchanged for the funds used to purchase the Mahwah Mansion; and (v) the Mahwah Mansion is nominally owned by Taurus Fund, which is nominally indirectly owned by Mr. Je, a close associate of the Debtor who serves as his "finance person," and is nominally managed by Mr. Barnett, the head of the Debtor's security. *See id.* at 59–60. Accordingly, the Bankruptcy Court concluded that five of the six *LiButti* factors support the conclusion that the Debtor beneficially owned the Mahwah Mansion. *Id.* at 60.

The Bankruptcy Court additionally rejected Appellants' argument that the Debtor cannot be the beneficial owner of the Mahwah Mansion because he is a thief. *See id.* To that end, the Bankruptcy Court found that "[w]here, as here, property is voluntarily parted with under false pretenses or fraudulent inducement, such property or its proceeds is the property of the perpetrator of that scheme and becomes property of a bankruptcy estate upon the filing of a bankruptcy petition." *Id.* (citing *Roseman Fam., LLC v. Picard*, 395 F. App'x 776, 769 (2d Cir. 2010)).

As to the Trustee's beneficial ownership claim regarding Taurus Fund, the Bankruptcy Court concluded, based on the above-discussed undisputed facts, that five of the six *LiButti* factors support the conclusion that the Debtor also beneficially owns Taurus Fund. *See* MSJ Order at 62. In reaching this conclusion, the Bankruptcy Court emphasized that Taurus Fund was created on the eve of bankruptcy while the Debtor was subject to collection activity, solely to hold an asset, *i.e.*, the Mahwah Mansion, for which no consideration was paid by Taurus Management, Hamilton Opportunity Fund, or the nominal direct and indirect owners of Taurus Fund. *Id.*

Turning to Trustee's alter ego claim, applying Nevada alter ego/reverse veil piercing law, the Bankruptcy Court concluded that the Trustee is additionally entitled to a judgment as a matter of law declaring Taurus Fund is the Debtor's alter ego. The Bankruptcy Court first found that the Debtor governs Taurus Fund and there is such a unity of interest between the Debtor and Taurus Fund that they are inseparable, insofar as: (a) the Debtor treated Taurus Fund's principal asset, the Mahwah Mansion, as his own; (b) corporate formalities were not observed; (c) Taurus Fund was only capitalized when comingled funds from other entities associated with the Debtor transited through it to pay invoices; and (d) funds were diverted to pay invoices of ostensibly unrelated entities associated with the Debtor without corporate authority. *See id.* at 63–64. Judge Manning additionally concluded that adherence to the corporate fiction of any separation between Taurus Fund and the Debtor would sanction fraud or promote injustice, given that Taurus Fund was created to hinder, delay, or defraud the Debtor's creditors by shielding his assets from collection activity. *Id.* at 64.

Accordingly, the Bankruptcy Court granted the Trustee's Motion for Summary Judgment, having determined that the Trustee was entitled to judgment as a matter of law that, pursuant to Sections 541, 542, and 544 of the Bankruptcy Code: (1) the Mahwah Mansion is equitably and beneficially owned by the Debtor, and thus, is property of the Estate; (2) the Debtor equitably owns Taurus Fund; and (3) Taurus Fund is the Debtor's alter ego, and any and all assets of Taurus Fund are property of the Estate and shall be turned over to the Trustee. *See* Judgment, Adv. Pro., ECF No. 178 at 2–3.

**Standard of Review**

This Court has jurisdiction to hear appeals from decisions of the Bankruptcy Court pursuant to 28 U.S.C. § 158(a), which provides in relevant part that "[t]he district courts of the United States

shall have jurisdiction to hear appeals . . . from final judgment, orders, and decrees . . . of bankruptcy judges." *Salim v. VW Credit, Inc.*, 577 B.R. 615, 621 (E.D.N.Y. 2017). "A district court may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." *In re Margulies*, 566 B.R. 318, 328 (S.D.N.Y. 2017) (citation omitted).

A bankruptcy court's grant of summary judgment is reviewed *de novo*. *See Springfield Hospital, Inc. v. Guzman*, 28 F.4th 403, 415 (2d Cir. 2022) (citing *In re Treco*, 240 F.3d 148, 155 (2d Cir. 2001)). A motion for summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *In re Dana Corp.*, 574 F.3d 129, 151 (2d Cir. 2009).

"Matters left to the [bankruptcy] court's discretion are reviewed for abuse of discretion." *In re Adelphia Commc'ns Corp.*, 342 B.R. 122, 126 (S.D.N.Y. 2006) (internal quotation marks omitted). A district court abuses its discretion when it bases its ruling "on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or render[s] a decision that cannot be located within the range of permissible decisions." *In re Sims*, 534 F.3d 117, 132 (2d Cir. 2008) (citations and internal quotation marks omitted); *see also In re Motors Liquidation Co.*, No. 10-CV-4322 (JGK), 2011 WL 2462773, at *2 (S.D.N.Y. June 20, 2011) ("[a] ruling is an abuse of discretion only if the bankruptcy court bases its ruling on a mistaken application of the law or a clearly erroneous finding of fact.") (citations and internal quotation marks omitted). A bankruptcy court's evidentiary rulings are reviewed for abuse of discretion. *Manley v. AmBase Corp.*, 337 F.3d 237, 247 (2d Cir. 2003). "In addition, the Second Circuit has explained, an evidentiary ruling that is an abuse of discretion is, however, only reversible if it also affects a party's substantial rights." *In re Bernard L. Madoff Inv. Sec., LLC*, 605 B.R. 570, 582 (S.D.N.Y. 2019), *aff'd sub*

*nom. In re Bernard L. Madoff Inv. Sec. LLC*, 830 F. App'x 669 (2d Cir. 2020) (citing *Schering Corp. v. Pfizer Inc.*, 189 F.3d 218, 224 (2d Cir. 1999)).

**Discussion**

In this appeal, Appellants argue that: (1) the Trustee lacks standing to bring these claims; and (2) the Bankruptcy Court erred in its threshold evidentiary rulings, to include its decision permitting the use of evidence from the Debtor's criminal trial on summary judgment; its preclusion of the Mohammed Declaration; and its decision permitting the Trustee to submit amended responses to Appellants' RFAs. *See generally* App. Br., ECF No. 17. In response, the Trustee argues that: (a) he has standing to bring general beneficial ownership and alter ego claims as the representative of the Debtor's creditors; and (b) the Bankruptcy Court did not abuse its discretion in admitting evidence from the Debtor's criminal proceedings, excluding the Mohammed Declaration, or permitting the Trustee to amend his responses to the RFAs. *See generally* Trustee Br., ECF No. 19. The Court agrees with the Trustee and **AFFIRMS** the decision of the Bankruptcy Court.

Evidentiary Rulings

As discussed, prior to setting forth the undisputed facts upon which the summary judgment determination was made, the Bankruptcy Court first overruled Appellants' objections regarding the Court's consideration of the Trustee's evidence from the Debtor's criminal trial, and sustained the Trustee's objection to Appellants' reliance on the Mohammed Declaration. These rulings are reviewed under an abuse of discretion standard, *see Manley*, 337 F.3d at 247, and for the reasons

discussed below, the Court finds that the Bankruptcy Court did not abuse its discretion as to either of these threshold determinations.[7]

Appellants principally challenge the Bankruptcy Court's consideration of evidence from the Debtor's criminal trial on the grounds that the trial transcripts were uncertified; the testimony relied upon lacked foundation; and the documentary evidence was not properly authenticated. *See* App. Br. at 25–29. Each of these arguments fails. Although Appellants are correct that evidence relied upon at summary judgment must be *presentable* in an admissible form at trial, *see* Fed. R. Civ. P. 56(c)(2), the Bankruptcy Court accurately observed that "material relied on at summary judgment need not be admissible *in the form presented*. Rather, so long as the evidence in question 'will be presented in admissible form at trial,' it may be considered on summary judgment." *See* MSJ Order at 10 (quoting *Smith v. City of New York*, 697 F. App'x 88, 89 (2d Cir. 2017) (summary order) (citing *Santos v. Murdock*, 243 F.3d 681, 683 (2d Cir. 2001) (*per curiam*)); *see also Johnson v. Dep't of Correction*, No. 3:22-CV-112 (KAD), 2024 WL 1256045, at *7 (D. Conn. Mar. 25, 2024) ("[T]he court has the discretion to consider unauthenticated or otherwise objectionable evidence where it is apparent that the party may be able to authenticate and establish the admissibility of those documents at trial.") (citation omitted). And here, Appellants offer no

[7] Appellants additionally challenge the Bankruptcy Court's summary judgment-adjacent decision to permit the Trustee to withdraw and amend his responses (or lack thereof) to Appellants' RFAs (hereinafter, the "Amendment Order"). *See* Adv. Pro., ECF No. 155. Appellants argue that many of the Trustee's allegations should have been deemed admittedly false, in light of the Trustee's failure to timely respond to the RFAs. But the Court is not persuaded. As an initial matter, it is unclear whether Appellants' challenge is properly asserted in *this* appeal, which pertains only to the MSJ Order, and not the separate Amendment Order. Nevertheless, setting aside this procedural question, the Court further concludes that the Bankruptcy Court did not abuse its discretion in permitting the Trustee to amend his responses to the RFAs. Indeed, it is well-settled that the Court "*may* permit withdrawal or amendment [of RFAs] if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits." *Cement & Concrete Workers Dist. Council Welfare Fund v. Manny P. Concrete Co.*, 145 F.4th 204, 209 (2d Cir. 2025) (quoting Fed. R. Civ. P. 36(b)). And here, it is uncontested (and frankly, axiomatic) that the withdrawal and amendment of the Trustee's RFA responses "promote[d] the presentation of the merits" of the underlying adversary proceeding. Moreover, the Court is not persuaded that Appellants were prejudiced by withdrawal and amendment of the Trustee's RFA responses, for the same reasons set forth by Judge Manning in the Amendment Order itself. *See* Adv. Pro., ECF No. 155 at 5.

compelling reason for the Bankruptcy Court to have doubted the authenticity of the subject trial transcripts, instead unpersuasively urging that they constituted hearsay, and that "the testimony relied on was never shown to be made on personal knowledge."[8] *See* App. Br. at 27–28. In its decision, the Bankruptcy Court properly recognized that the contested exhibits would or could be presented in an admissible form at trial. *See* MSJ Order at 11 ("The trial transcripts demonstrate the witnesses in the Criminal Action could be called to testify at trial to authenticate and provide foundation for the Trustee Exhibits."). The Bankruptcy Court did not abuse its discretion in permitting the evidence from the Debtor's criminal trial to be offered in connection with the Trustee's Motion for Summary Judgment.

Additionally, the Court concludes that the Bankruptcy Court properly exercised its discretion in sustaining the Trustee's challenge the Mohammed Declaration on personal involvement grounds. The Bankruptcy Court precluded consideration of the Mohammed Declaration insofar as it "draws conclusions without personal knowledge of the transactions at issue based on unspecified documents that have not been presented to the Court," and is not otherwise an authentication document. MSJ Order at 12. The Court agrees with this determination. Rule 56(c)(4) of the Federal Rules of Civil Procedure requires that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge." And here, as the Bankruptcy Court and the Trustee correctly observe, Mr. Mohammed's Declaration states, in no uncertain terms, that he was not personally involved in the transactions discussed therein and that his Declaration derives from his review of certain business records that he does not identify or provide for the Court. *See* Adv. Pro., ECF No. 137-2 at ¶ 1. Appellants' arguments

[8] The Court agrees with the Trustee that certification of the trial transcripts would not impact whether they contain hearsay, and that this challenge by Appellants misapprehends the rules regarding hearsay and is more properly one of authenticity. *See* Trustee Br. at 61–62.

as to the admissibility of the Mohammed Declaration are frivolous. Thus, the Court has little trouble concluding that the Bankruptcy Court did not abuse its discretion in sustaining the Trustee's objection to the Mohammed Declaration.

Standing

Having affirmed the Bankruptcy Court's threshold evidentiary findings, the Court next turns to the issue of the Trustee's standing. "Under the Bankruptcy Code, the bankruptcy trustee may bring claims founded [both] on the rights of the debtor and on certain rights of the debtor's creditors." *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1093 (2d Cir. 1995) (internal quotation marks omitted). "To assert the debtor's rights, trustees generally must invoke [S]ection 541 of the Code – which sweeps all legal or equitable interests of the debtor in property as of the commencement of the bankruptcy case into the estate administered by the trustee." *In re Kwok*, 172 F.4th 145, 153 (2d Cir. 2026) (citing *In re Nordlicht*, 115 F.4th 90, 104 (2d Cir. 2024)) (internal quotation marks omitted). "Trustees may also pursue the 'rights of the debtor's creditors' by turning to other sections of the [Bankruptcy] Code, including [S]ection 544," which "permits the trustee to assert any generalized claims that would belong to a hypothetical high-priority lien creditor."[9] *Id.* (quoting *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 700 (2d Cir. 1989)).

Here, Appellants contend that the Trustee's claims are "particular," not "general," and that the claims the Trustee brings belong to "those whose funds were used to invest in Taurus Fund," *i.e.*, defrauded members of G Club, and that the Bankruptcy Court erred in concluding otherwise. The Court is not persuaded, and indeed, is bound by the Second Circuit's recent

[9] Here, the Trustee pursues claims under both Section 541 and Section 544. Appellants challenge his standing under either Section. But as the Second Circuit concluded in *In re Kwok*, this Court "need not reach the issue of the Trustee's standing under [S]ection 541 because we conclude that the Trustee may assert the claims at issue here under [S]ection 544." 172 F.4th at 153 n.3.

decision in *In re Kwok*,[10] which involved similar reverse veil-piercing claims in connection with the Trustee's effort to secure, among other assets, the Lady May, the Debtor's super yacht nominally held by the Debtor's daughter and HK International Funds Investments (U.S.A.) Limited, LLC. In *In re Kwok*, the Trustee, as he does here, brought an alter ego claim pursuant to Section 544. Defendants in the underlying adversary proceeding, and again on appeal to the district court as well as the Second Circuit, challenged the Trustee's standing to do so. The Second Circuit rejected the argument. *See generally id.* Although recognizing that "a bankruptcy trustee has no standing generally to sue third parties on behalf of the estate's creditors, *see Wagoner*, 944 F.2d 114 (2d Cir. 1991), the Court concluded that "[S]ection 544 can coexist with *Wagoner* because [Section 544] does not allow trustees to assert just *any* creditor claim." *In re Kwok*, 172 F.4th at 154 (emphasis in original). "Put simply, the *Wagoner* rule bars trustees from asserting personal-creditor claims, while [S]ection 544 allows them to pursue general causes of action that would benefit *any* hypothetical creditor." *Id.* at 155 (emphasis in original). The Second Circuit additionally concluded that "trustees may assert generalized alter-ego claims either under [S]ection 544 or – if those claims also belong to the estate itself – under [S]ection 541," *id.* (citing *St. Paul Fire*, 884 F.2d at 700, 704, and that *this* Trustee's "reverse veil-piercing claims are general," insofar as "[s]uch claims increase the basket of assets that could be used to satisfy *any and all liabilities* owed by the debtor," and "enlarge the size of the bankruptcy estate for all creditors," *id.* at 155–56 (emphasis in original) (citing *In re Nordlicht*, 115 F.4th at 104). So too here. Because a hypothetical creditor could bring the same generalized claims against Taurus Fund, the Trustee

[10] Appellants do not appear to challenge that Nevada law recognizes reverse veil-piercing claims, and that beneficial ownership is recognized by New Jersey and Nevada law. *See* MSJ Order at 50–51; *see also In re Kwok*, 172 F.4th at 153–54 ("To evaluate [Section 544] claims, [courts] must determine whether 'state law would allow . . . a supposed or hypothetical creditor of the debtor' to bring them.") (quoting *In re Vienna Park Props.*, 976 F.2d 106, 115 (2d Cir. 1992)).

may also do so under Section 544.[11] *See In re Kwok*, 172 F.4th at 156. Accordingly, and in light of *In re Kwok*, the Bankruptcy Court's conclusion that the Trustee had standing to assert his claims against Taurus Fund is **AFFIRMED**.

The Merits

Lastly, the Court observes that although Appellants identify, as one of their purported "issues presented," whether the Bankruptcy Court erred "given issues of fact identified by Appellants," *see* App. Br. at 9, Appellants do not actually make any specific challenge to the Bankruptcy Court's findings of undisputed facts. They do not identify record evidence which might create a genuine issue of material fact as to any of the Trustee's claims. And while this Court's obligation is to review the Bankruptcy court's determination *de novo*, it is not this Court's obligation to "raise and make [Appellants'] arguments for them." *Moore v. Peters*, 92 F. Supp. 3d 109, 126 (W.D.N.Y. 2015); *see also Beare v. Millington*, No. 07-CV-3391 (TLM), 2014 WL 1236750, at *2 (E.D.N.Y. Mar. 25, 2014), *aff'd sub nom. Harris v. Millington*, 613 F. App'x 56 (2d Cir. 2015) ("It was the plaintiff's duty to set forth evidence showing issues of disputed material fact in opposition to defendant's thoroughly argued and supported motion for summary judgment and the Court will not step in to advocate for plaintiff."); *Amnesty Am. v. Town of West Hartford*, 288 F.3d 467, 470 (2d Cir. 2002) ("[Rule 56] does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute."); *Bonnie & Co. Fashions v. Bankers Tr. Co.*, 945 F. Supp. 693, 726 (S.D.N.Y. 1996) ("It is not the job of this, or any other, court to construct arguments or to ferret out evidentiary support on behalf of a party.").

[11] For avoidance of doubt, the Court agrees with the Bankruptcy Court that the Trustee has not alleged, or sought relief for, securities or wire fraud, *i.e.*, "particular claims that particular creditors could bring against the Taurus Parties." *See* MSJ Order at 50, 52.

The Bankruptcy Court applied the correct law to the Trustee's claims under applicable New Jersey and Nevada law. Appellants do not argue to the contrary. Having identified the applicable law, the Bankruptcy Court then offered a painstaking assessment of the voluminous record evidence to determine whether any genuine issue of material fact remained to be tried. As is also true on appeal, Appellants advanced only legal arguments in opposition to the Trustee's Motion for Summary Judgment and did not rely on any conflicting evidence which might give rise to a genuine issue of material fact for trial. For example, as to the beneficial ownership of the Mahwah Mansion, Appellants argued only that the Debtor "cannot own the Mahwah Mansion because a thief does not take title to property and the Trustee's argument is predicted on theft of funds from G Club and its members." MSJ Order at 53. The same is true of the claims regarding Taurus Fund. *Id.* at 61. Indeed, as the Bankruptcy Court correctly observed: "[f]aced with the Trustee's factual material, the Taurus Parties barely contest any of the Trustee's asserted undisputed fact[s] and have failed to put forward factual material demonstrating a genuine dispute of material fact." *Id.* at 65 (citation omitted). The Court does not discern any "issues of fact identified by Appellants" in the briefing. Indeed, Appellants appear to rely upon the same "dilatory and wasteful" strategy pursued in the Bankruptcy Court. *Id.* In short, the Court agrees with the Bankruptcy Court's assessment of the record evidence.

**Conclusion**

For the foregoing reasons, the Court **AFFIRMS** the order of the Bankruptcy Court granting summary judgment in favor of the Trustee on all of his claims. Accordingly, the Clerk of Court is directed to enter judgment in favor of the Trustee and close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 20th day of August 2026.

*/s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE